UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TAMRA STEWARD AND<br>    BILLY R. STEWARD | CIVIL ACTION 3-04-1544 |
| VERSUS | U.S. DISTRICT JUDGE ROBERT G. JAMES |
| P. O. INVESTMENTS, INC. | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment, **Doc. # 21**, filed by defendant, P. O. Investments, Inc., referred to me by the district judge for Report and Recommendation.

Plaintiff, Tamra Steward (Steward), a postal patron at the Pioneer Post Office, sued the owner, P. O. Investments, Inc. (P O) and lessee, United States, for damages for injuries she alleges she sustained when she slipped on some rocks on the paved parking lot after retrieving her mail. Plaintiff claims that, on June 24, 2003, she stopped by the post office to pay her box rent. The parking lot in front of the post office is paved with concrete (see photo, Reply Memorandum, Exh. 2) and a sidewalk runs beside the front of the building to near the front door, where it steps up to the concrete parking lot. A gravel parking lot abuts both the sidewalk and the concrete parking lot. As plaintiff walked out of the building and toward her car on the paved lot, she walked around a concrete bumper as shown in the photo. She got almost to the sidewalk when, she says, her "foot started to slip on the gravel and my foot buckled under." Steward says that as she walked to her car, there were rocks or gravel on the pavement. In her deposition, plaintiff agreed that "[i]t was just a rock here, a rock there. This whole area wasn't covered in

gravel." However, she said that "there were rocks everywhere." Plaintiff surmised that the rocks were "brushing up as cars pull up to the bumper and in front of the post office probably they get scattered...." Plaintiff slipped on the paved part of the lot.

Plaintiff's husband sues for loss of consortium.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 at 2552; International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. Little v. Liquid Air Corporation, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Izen v. Catalina 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex at 2553.

Analysis

Defendant claims that, under the lease to the United States it is not responsible for keeping the parking lot clean. It also asserts that the gravel did not pose an unreasonable risk of harm and thus it has no liability to the plaintiffs.

1) The lease

The lease, which P O assumed, provides that the property leased is a "one-story masonry building and which property contains areas, spaces, improvements, and appurtenances" including 1,000 feet of net floor space, 48 square feet of platform, 4,352 square feet of parking and maneuvering, and driveway, landscaping, and sidewalks. A "Maintenance Rider Lessor Responsibility" provision, paragraph a, provides that:

> The Lessor shall, except as otherwise specified herein and except for damage resulting from the negligence of Postal Service agents or employees, maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances, whether severable or non-severable, furnished by this Lessor under this Lease in good repair and tenantable condition.

The lease does not otherwise provide for parking lot care.

Plaintiff points to paragraph a (above) of the maintenance rider as evidencing P O's obligation to sweep the parking lot. However, that provision specifically refers to the building and " equipment, fixtures and appurtenances" and specifically references P O's duty to designate maintenance repairmen for electrical, plumbing and heating, ventilating and air conditioning emergencies as well as window door and locks and "other elements" emergencies. The same provision permits P. O. to enter the premises to make repairs.

It is clear that the maintenance rider applies to repairs to the building only and is not intended to apply to the grounds or parking lot or to cleaning duties. Indeed, paragraph h of the

rider makes clear that only certain types of maintenance are lessor's responsibility under the agreement ("Whenever there is a need for maintenance or a repair which is the Lessor's obligation under this Maintenance rider...").

P O, a non-occupier of the premises, has no responsibility for hazardous conditions on the parking lot.

2) The gravel

Even if P O had been responsible for the parking lot, the gravel did not present an unreasonable risk of harm. This case is one of an alleged defect on but not in the premises; this case does not involve the "ruin" of a building. Therefore, the strict liability provisions of CC 2317 are inapplicable. Further, because the this case does not involve a merchant[1], the provisions of R.S. 9. 2800.6 are also inapplicable.

Rather, this case is governed by general principles of negligence under CC 2315 and P O would otherwise have been liable only if plaintiff proves the existence of a condition on the premises which created an unreasonable risk of harm. Lear v. United States Fire Insurance Co., 392 So.2d 786, 789 (La. App. 3rd Cir. 1980). To prevail in a negligence action under Louisiana law, a plaintiff must prove that: 1) the conduct in question was the cause-in-fact of the resulting harm; 2) defendant owed a duty of care to plaintiff; 3) the requisite duty was breached by the defendant; 4) the risk of harm was within the scope of protection afforded by the duty breached. Peterson v. Gibraltar Savings & Loan, 733 So.2d 1198, 1203-04 (La. 1999).

Where, as here, the alleged negligence concerns an alleged defect on a premises, the determination of whether the occupier owed a duty of care turns upon whether the condition was

---

[1] A merchant is defined, for purposes of the merchant liability statute as "one whose business it is to sell goods, foods, wares, or merchandise ...." The post office primarily provides a service.

"unreasonably dangerous." <u>Williams v. Leonard Chabert Medical Center</u>, 744 So.2d 206, 209 (La. App. 1st Cir. 1999).

"The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable danger to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of reasonable prior discovery of such unobservable dangerous conditions of the premises, and correction thereof or a warning to the invitee of the danger.

"On the other hand, the occupier does not insure an invitee against the possibility of accident. The invitee assumes all normally observable or ordinary risks attendant upon the use of the premises. The occupier is not liable for an injury to an invitee resulting from a danger which is observable or which should have been observed by the invitee in the exercise of reasonable care, or from a danger which the invitee should reasonably have appreciated before exposing himself to it." <u>Levert v. Travelers Indemnity Co.</u>, 140 So.2d 811 (La. App. 3rd Cir. 1962).

The paved parking lot here is adjacent to the gravel parking lot and, as plaintiff had surmised for herself, "[i]t is to be expected" that patrons and their vehicles will track gravel onto the parking lot.[2] See <u>Crochet v. Freeman</u>, 504 So.2d 1064 (La. App. 1st Cir. 1987). See also, <u>Springer v. St Bernard Parish School Board</u>, 521 So.2d 461 (La. App. 4th Cir. 1988). Plaintiff had a post office box at this post office since 1976, a period of 27 years, and therefore had likely traversed the more than 6,000 times without falling. Plaintiff knew the adjacent gravel lot was present and must have known that some gravel found its way onto the paved portion of the lot.

---

[2] See plaintiff's deposition, pp. 28 and 90-91.

Although plaintiff's deposition testimony is ambiguous as to whether she saw the gravel before she slipped, she certainly should have seen it, in the exercise of ordinary care. The gravel did not present a trap and was easily observable, according to plaintiff's own testimony. The gravel did not present an unreasonable risk of harm or dangerous condition. See <u>Waters v. McDaniel Recreation Center, Inc.</u>, 521 So. 2d 788 (La. App. 2nd Cir. 1988); <u>Kidder v. City of Opelousas</u>, 185 So.2d 66 (La. App. 3rd Cir. 1966). As plaintiff testified:

> Q:*** Do you think if somebody from the post office would have swept this area on the cement handicap parking spot and pushed the gravel back into the gravel area and made, like, a daily sweep, I guess you could call it, that this accident would have occurred?
>
> A: It would almost be impossible because you don't know how many vehicles and what time of the day vehicles are going on this gravel in order to make the rocks get on top of the concrete. It would be almost impossible. You would have to have somebody out there as a guard dog all the time.[3]

Because the gravel in this case did not present an unreasonable risk of harm, there was no duty to keep the lot free of gravel. Indeed short of inspecting and sweeping the lot after each patron's car entered it, it would be nearly impossible to maintain it utterly free of gravel or rocks. See <u>Crochet</u>, supra. Further, such an obligation would be cost prohibitive.[4]

Finally, plaintiff, in her opposition memorandum, briefly argues that the premises were defective because there was a "drop-off" from the paved lot to the gravel lot. Plaintiff points to her deposition testimony at p. 92. However, plaintiff testified that when she fell, her behind and backs of her legs landed on the sidewalk, not the gravel lot. The drop-off appears from the

---

[3] See plaintiff's deposition, pp. 90-91.

[4] See discussion in <u>Reed v. Wal-Mart Stores Inc</u>. 708 So.2d 362, (La. 1998).

photographs to be at least the height of a one and a half bricks, and perhaps more, and is in fact a step down from the paved lot to the paved sidewalk. The gravel lot appears to be more or less level with the sidewalk. In any event, plaintiff did not trip on the step, see deposition, pp.22,28,29-30,91, and she made perfectly clear that the gravel, and not the drop-off, caused her to slip and fall, but explained that her foot "buckled under" the "drop-off". Further, plaintiff had maintained a post office box there since 1976, a period of 27 years, and had apparently just utilized the step minutes before, traversing the same area where she later fell. P O was not aware of other accidents having ever occurred at this spot. Finally, a step down of this magnitude outside a post office is not an unreasonably dangerous condition. See Rigdon v. United States, 2003 WL 1618569 (E.D. La. 2003).

For the foregoing reasons, I find that there are no genuine issues of material fact and that P O is entitled to judgment as a matter law.

Therefore, IT IS RECOMMENDED that the motion for summary judgment, Doc. #21, be GRANTED.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS,**

CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

July 7, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE